UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

WILLIAM A. RHODES,         )
                                 )
               Plaintiff   )
                                 )
         vs.            )      CAUSE NO. 3:06-CV-818 RM
                               )
D C CURRENT, INC.,      )
                               )
           Defendant  )

OPINION and ORDER

On December 18, 2006, William Rhodes filed a complaint against D C Current alleging that it violated The Age Discrimination in Employment Act, 29 U.S.C. § 621, by his wrongful discharge. D C Current moved for summary judgment, and, for the following reasons, the court grants that motion.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). There is no genuine issue of material fact when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light

most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in its favor. Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004); see also Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" (quoting Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

> [T]he plain language of Fed. R. Civ. P. 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex v. Catrett, 477 U.S. 317, 322-23 (1986).

D C Current hired Mr. Rhodes in July of 1992 as a machinery maintenance worker. Mr. Rhodes was the only maintenance worker in the plant and remained in that position until he quit on June 2, 2006. Mr. Rhodes received periodic wage increases for satisfactory performance during the first ten years of his employment.

In 2002, D C Current promoted Michael Mollencupp to Plant Manager. Part of Mr. Mollencupp's responsibilities was to reduce labor costs and keep employees on task. Mr. Mollencupp found that Mr. Rhodes had a tendency to talk to machine operators while he was fixing machines. Mr. Rhodes says these interactions were necessary to service or maintain machinery. Mr. Mollencupp informed Mr. Weldy, President of D C Current, of Mr. Rhodes' talking and Mr. Weldy tried to work around it by developing a procedure whereby when a machine went down Mr. Rhodes would send the machine operator back to Mr. Mollencupp for reassignment to another job. This plan didn't work; Mr. Rhodes would either talk to the adjacent machine operator or forget to send back the involved operator for another job. Mr. Mollencupp's efforts to decrease Mr. Rhodes' talking resulted in friction between the two.

During a May 2004 altercation, Mr. Mollencupp called Mr. Rhodes a "bald-headed pussy." Mr. Weldy issued a "verbal written warning" to Mr. Mollencupp for this incident stating: "Verbal written warning due to terminology used to reprimand an employee. Mike used [derogatory]

3

remarks to Bill Rhodes." Mr. Rhodes wasn't told that any action was taken against Mr. Mollencupp at the time.

On another occasion that same month, Mr. Mollencupp asked Mr. Rhodes to stop talking to Kimberly Haney, a co-worker. Mr. Rhodes responded later that day by calling Mr. Mollencupp a "faggot" and asking him, "why do you have to be a fucking prick?" When Mr. Mollencupp suggested they go talk to Mr. Weldy and resolve the matter, Mr. Rhodes refused to do so. The continued friction between Mr. Mollencupp and Mr. Rhodes led Mr. Weldy to tell both of them, "shake hands, quit arguing and if you don't I'll fire both of you fuckers."

In February 2006, Mr. Rhodes alleges that Mr. Mollencupp challenged him to a physical altercation by stating "let's take it outside you old bald-headed pussy." Mr. Rhodes told Tony Lewis, foreman in the cutting and termination department, to report this incident to Mr. Weldy. Mr. Weldy claims to have never been told of this incident.

On May 18, 2006, Mr. Mollencupp allegedly "flipped off" Mr. Rhodes in the presence of co-workers. The next day, Mr. Rhodes told Mr. Weldy that the stress from dealing with Mr. Mollencupp was endangering his health and that he could only work for two more weeks if Mr. Mollencupp was going to be allowed to continue "such aged-based harassment." Mr. Weldy told Mr. Rhodes that if he thought that the situation was damaging to his health then he should quit. Mr. Rhodes

quit on June 2, and that same day filed his complaint with the EEOC for age-based discrimination.[1] Mr. Rhodes was 47 years-old.

The Age Discrimination in Employment Act's purpose is "to prohibit arbitrary age discrimination in employment." 29 U.S.C. § 621(b). To prevail on an age discrimination claim, a plaintiff must show either direct evidence of discriminatory motive or intent or rely on the indirect burden-shifting method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The direct method requires "providing direct evidence, such as an 'outright admission' of discrimination, or by presenting sufficient circumstantial evidence. But such circumstantial evidence must point directly to a discriminatory reason for the termination decision." Ptasznik v. St. Joseph Hospital, 464 F.3d 691, 695 (7th Cir. 2006) (internal citations omitted). Mr. Rhodes has presented no direct evidence of discriminatory motive or intent and in his response to defendant's summary judgment motion proceeds solely under the indirect method.

To establish a *prima face* case using the indirect method of proof established by McDonnell Douglas, Mr. Rhodes must show that he: (1) was over 40 years old; (2) was meeting legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated less

---

[1]    In Mr. Rhodes' Charge of Discrimination he checked that the discrimination was based on age and left the retaliation box empty. Mr. Rhodes' complaint occasionally hints at a retaliation claim, but since he didn't properly allege that to the EEOC, it is deemed waived. Ajayi v. Aramark Bus. Svs., Inc., 336 F.3d 520, 527 (7th Cir. 2003)

favorably than younger, similarly situated employees. <u>Griffin v. Potter</u>, 356 F.3d 824, 828 (7th Cir. 2004). At a minimum, he must demonstrate a triable issue as to each element in order to survive summary judgment. <u>Id.</u> If Mr. Rhodes can prove a prima facie case, the burden of production shifts to D C Current to show legitimate, non-discriminatory reasons for its actions. <u>Johal v. Little Lady Foods, Inc.</u>, 434 F.3d 943, 946 (7th Cir. 2006).

Although Mr. Rhodes has shown that he is a member of a protected class and, arguably, that he was reasonably meeting his employer's legitimate job expectations, he hasn't fulfilled the other two elements. Mr. Rhodes hasn't shown that he was subject to an adverse employment action. "An adverse employment action must be materially adverse, not merely an inconvenience or a change in job responsibilities." <u>Griffin v. Potter</u>, 356 F.3d at 829. It must be a change that "significantly alters the terms and conditions of the employee's job." <u>Id.</u> Mr. Mollencupp's two "bald-headed pussy" comments and the "flipping off" incident don't rise to the level of adverse employment action. "General hostility and comments do not qualify as actionable adverse employment actions unless the hostility was severe and pervasive." <u>Id.</u>

Mr. Rhodes can only satisfy the "adverse employment" action prong of the <u>McDonnell Douglas</u> test if he was constructively discharged. To establish constructive discharge, a plaintiff "must show that his

working conditions were so intolerable that a reasonable person would have been compelled to resign", and that the "conditions were intolerable because of impermissible *age discrimination*." <u>Bennington v. Caterpillar, Inc.</u>, 275 F.3d 654, 660 (7th Cir. 2001) (internal citation omitted). "Working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because 'in the 'ordinary' case an employee is expected to remain employed while seeking redress.'" <u>Tutman v. WBBM-TV, Inc./CBS, Inc.</u>, 209 F.3d 1044, 1050 (7th Cir. 2000) (*quoting* <u>Drake v. Minnesota Mining & Mfg. Co.</u>, 134 F.3d 878, 886 (7th Cir. 1998)).

The incidents cited by Mr. Rhodes don't generally rise to the level warranting constructive discharge. Mr. Rhodes alleges that Mr. Mollencupp referred to him as a "bald-headed pussy" in 2004; challenged him by stating "let's take it outside you old bald-headed pussy" in 2006; and "flipped him off" in 2006. "[I]solated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." <u>Merillat v. Metal Spinners, Inc.</u>, 470 F.3d 685, 694 (7th Cir. 2006). Mr. Rhodes also alleges that Mr. Weldy told him and Mr. Mollencupp to "shake hands, quit arguing and if you don't I'll fire both of you fuckers" and "that if he thought that the situation was damaging to his health then he should quit." *See* <u>Rabinovitz v. Pena</u>, 89 F.3d 482, 489-490 (7th Cir. 1996)

7

("[A]nd the comment allegedly made by Shepack to the effect that plaintiff could quit if he was not happy with the job...only an unreasonably sensitive employee would feel compelled to resign after hearing such a remark.") Even taken together, these occurrences over a 2-year period wouldn't have compelled a reasonable employee to resign.

Mr. Rhodes also hasn't come forth with evidence sufficient to show he was treated less favorably than younger, similarly situated employees. "Employees are similarly situated if they are directly comparable in all material respects." Raymond v. Ameritech Corp., 442 F.3d 600, 610 (7th Cir. 2006). In evaluating whether two employees are similarly situated:

> the court must look at all relevant factors, including whether the employees '(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications-provided the employer considered these latter factors in making the personnel decision.'

Bio v. Federal Express Corp. 424 F.3d 593, 597 (7th Cir. 2005) (quoting Ajayi v. Aramark Bus. Servs., Inc., 336 F.3d at 532. A plaintiff also must show that the similarly situated employee was "substantially younger," meaning that "the relevant individual must be at least ten years younger than the plaintiff." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 619 (7th Cir. 2000). In his affidavit, Mr. Rhodes states "younger co-workers did not receive such similar derogatory remarks, or such similar physically-threatening remarks...Those substantially younger D C co-

workers who (unlike me) received distinctively more favorable treatment from Mike Mollencupp, include Josh Beutel, Kimberley Haney, and the aforementioned Tony Smith." This scant information would not support a finding that these individuals were substantially younger, similarly situated or treated more favorably.

For the foregoing reasons, D C Current's motion for summary judgment [Doc. No. 21] is GRANTED. As an attachment to its summary judgment motion, D C Current also filed a motion to strike portions of Mr. Rhodes' affidavit. Because those statements didn't affect the outcome of the summary judgment ruling, that motion is DENIED as moot. Lastly, the scheduling conference set for April 15, 2008 at 3:00 p.m. is VACATED.

SO ORDERED.

ENTERED: April 10, 2008

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court